UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSICA RAMOS GONZALEZ o/b/o
J.A.M., a minor,

      Plaintiff,

  v.

ANDREW SAUL, Commissioner of Social
Security,

      Defendant.

18-CV-6240

DECISION AND ORDER

---

On March 22, 2018, the plaintiff, Jessica Ramos Gonzalez, brought this action under the Social Security Act ("the Act") on behalf of the claimant, J.A.M., a minor child under 18 years of age. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that J.A.M. was not disabled. Docket Item 1. On November 9, 2018, Gonzalez moved for judgment on the pleadings, Docket Item 13; on January 8, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; and on January 29, 2019, Gonzalez replied; Docket Item 17.

For the reasons stated below, this Court grants Gonzalez's motion in part and denies the Commissioner's cross-motion.

**BACKGROUND**

I.  **PROCEDURAL HISTORY**

On August 1, 2014, Gonzalez applied for Children's Supplemental Security Income benefits on behalf of J.A.M. Docket Item 9 at 125. She claimed that J.A.M. had been disabled since June 6, 2014. *Id.*

On October 7, 2014, Gonzalez received notice that her application was denied because J.A.M. was not disabled under the Act. *Id.* at 66. Gonzalez requested a hearing before an administrative law judge ("ALJ"), *id.* at 123, which was held on November 28, 2014, *id.* at 18. The ALJ then issued a decision on April 20, 2017, confirming the finding that J.A.M. was not disabled. *Id.* at 30. Gonzalez appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 4.

II.  **CHILDREN'S DISABILITY STANDARD**

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." In denying Gonzalez's application, the ALJ evaluated her claim under the Social Security Administration's three-step evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), defined as work activity that is both substantial and gainful. *Id.* § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work usually

done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b). If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience. *Id.* at § 416.924(b). If the claimant is not engaged in SGA, the ALJ proceeds to the next step. *Id.*

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." *Id.* at § 416.924(a). For a claimant under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant has a severe impairment, the ALJ proceeds to the third step; if not, the claimant is not disabled. *Id.* § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings. *Id.* § 416.924(d). If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled; if not, then the claimant is not disabled. *Id.* § 416.924(d).

To determine whether impairments meet or medically equal one in the listings, the ALJ compares the limitations to explicit criteria in the listings. 20 C.F.R § 416.925.

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others;

3

(4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment. *Id.* § 416.926a(b). The child's impairment functionally equals a listing if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id.* On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(2)(i), § 416.926a(e)(2)(iii). For example, in the domain of "health and well-being," a child is considered to have a "marked" limitation if he or she is frequently ill as a result of his or her impairments or exhibits frequent worsening of symptoms resulting in medically-documented exacerbations. *Id.* § 416.926a(e)(2)(iv). "Frequent" means episodes that occur on average every four

months and lasting two weeks or more, or more often than three times a year but lasting less than two weeks, or less often but of overall equivalent severity.  *Id.*

An "extreme" limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3)(i).  An "extreme" limitation is one that is "more than marked."  *Id.*  The ALJ will determine a limitation to be "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score.  *Id.* § 416.926a(e)(3)(iii).  In the domain of "health and well-being," for example, the ALJ will consider a child to have an "extreme" limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a "marked" limitation.  *Id.* § 416.926a(e)(3)(iv).

III.  **THE ALJ'S DECISION**

The ALJ determined that J.A.M. was born on February 16, 2007, and therefore was school-aged on June 6, 2014, and on the date the application was filed.  Docket Item 9 at 21.  At step one, the ALJ found that J.A.M. had not engaged in SGA since the alleged disability onset date.  *Id.*  At step two, the ALJ found that J.A.M. suffered from several impairments: "learning disability; attention deficit hyperactivity disorder (ADHD); obstructive sleep apnea; allergic rhinitis; chronic uticaria; and angioedema."[1]  *Id.*  Although the ALJ found these impairments to be severe, at step three he determined

---

[1] Uticaria is commonly known as hives, and angioedema is associated swelling in soft tissues such as the eyelids or mouth.

5

that they did not meet, medically equal, or functionally equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

The ALJ gave "specific consideration" to three listings: 108.05 Dermatitis, 112.05 Intellectual Disorder, and 112.11 Neurodevelopmental Disorders.  *Id.*  The ALJ's decision discussed all three together and determined that the "medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment."  *Id.*  Further, the ALJ noted that "no treating, examining, or non-examining medical source has mentioned findings or rendered an opinion" that the claimant's impairments met the criteria of any listed impairments, either singly or in combination.  *Id.*

As required by 20 C.F.R. § 416.924a(a) and SSR 09-2p, the ALJ considered all relevant evidence in the case record—including objective medical evidence; information from other sources such as school teachers, family members, or friends; and other relevant evidence—in reaching his determination.  *Id.*  The ALJ also explicitly considered the "whole child," as required by 20 C.F.R. § 416.926a(b) and (c) and explained in SSR 09-1p.  *Id.* at 22.  In doing so, the ALJ evaluated how J.A.M. functions in all settings and at all times as compared to other children the same age who do not have impairments.  *Id.*  The ALJ also assessed the interactive and cumulative effects of J.A.M.'s impairments, as well as the degree of J.A.M.'s limitation in each of the six functional equivalence domains.  *Id.* at 24-29.

**STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

I. **ALLEGATIONS**

Gonzalez objects to the ALJ's decision at step three. Docket Item 13-1 at 11. She specifically argues that the ALJ erred by failing to properly evaluate Listing 112.05 Intellectual Disorder. *Id*. Gonzalez further argues that the ALJ's findings in the domains

7

of acquiring and using information, attending and completing tasks, and caring for self were based on a selective reading of the record, warranting remand. *Id.* at 18. This Court agrees with Gonzalez that remand is warranted to consider whether J.A.M. explicitly meets Listing 112.05(B).[2]

II. **ANALYSIS**

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments "meets, medically equals, or functionally equals" an impairment in the listings. 20 C.F.R. § 416.924(a). The ALJ must "conduct a distinct analysis that would permit adequate review on appeal." *Aung Winn v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013) (quoting *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008)) (summary order). A "one-sentence, conclusory analysis without any recitation of the facts or medical evidence" will not "provide an analysis of [the claimant's] impairments sufficient to enable [the court] to conclude that the ALJ's finding is supported by substantial evidence." *Hamedallah ex rel. E.B. v. Astrue*, 876 F.Supp.2d 133, 144 (N.D.N.Y. 2012). So the ALJ must "'build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review.'" *Id.* at 142 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Listing 112.05 Intellectual Disorder, provides the relevant criteria for determining whether a child between the ages three and eighteen has an intellectual challenge severe enough to constitute a disability under the Act. Either one of two sets of

---

[2] Because the "remaining issues . . . may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.2d 1297, 1299 (10th Cir. 2003).

requirements can satisfy that listing. One set, 112.05(B), is satisfied when the claimant meets two criteria:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>     a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>     b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>     a. Understand, remember, or apply information (see 112.00E1); or
>     b. Interact with others (see 112.00E2); or
>     c. Concentrate, persist, or maintain pace (see 112.00E3); or
>     d. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05(B).[3]

---

[3] The full text of Listing 112.05 is:

> 112.05 Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:
>     A. Satisfied by 1 and 2 (see 112.00H):
>         1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>         2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.
>     OR
>     B. Satisfied by 1 and 2 (see 112.00H):
>         1. Significantly subaverage general intellectual functioning evidenced by a or b:
>             a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>             b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>         2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>             a. Understand, remember, or apply information (see 112.00E1); or

The ALJ discussed three separate child intelligence evaluations of J.A.M. Docket Item 9 at 23. The first was a "WRAT-IV standard achievement measure test" administered in September 2014 by consultative examiner Yu-Ying Lin, Ph.D., that yielded a full-scale IQ score of 73 and a Verbal Comprehension Index score of 77. *Id.* at 23, 221. The second was a "WISC-IV test" administered in December 2014 by Loni Coleman, a certified school psychologist, that resulted in a full-scale IQ score of 83 and a Verbal Comprehension Index score of 81. *Id.* at 23, 234. The last was a "WISC-V test" administered in May 2016 by Ms. Coleman that resulted in a full-scale IQ score of 73. *Id.* at 555. On that most recent test, however, J.A.M.'s Verbal Comprehension Index score was 65, which fell within the very low and mildly deficient range. *Id.*

While the first two evaluations do not meet the first prong of 112.05(B), the most recent one does. J.A.M.'s full scale IQ score of 73 falls between 71 and 75, and J.A.M.'s verbal score of 65 falls below 70, meeting the explicit criteria of 112.05(B)(1)(b). When discussing the May 2016 test, the ALJ mentioned only the full scale score of 73 and noted that "the claimant's processing speed continued to return high scores," which suggested "continued significant varying cognitive abilities." *Id.* at 23. But he did not address J.A.M.'s verbal score, even though with that score J.A.M. met the first prong of 112.05(B).[4]

---

        b. Interact with others (see 112.00E2); or
        c. Concentrate, persist, or maintain pace (see 112.00E3); or
        d. Adapt or manage oneself (see 112.00E4).

[4] Gonzalez suggests that the ALJ might have evaluated J.A.M.'s impairments using an older standard under which J.A.M. would not have met the criteria, even with the May 2016 evaluation. But the error requires remand regardless of whether or not that is true.

Even more significantly, the ALJ did not discuss whether J.A.M.'s most recent evaluation possibly met both 112.05(B) criteria and therefore evidenced a disability under that listing. Instead, he wrote only that after "specific consideration was given to listing[] . . . 112.05 intellectual disorder[,] . . . the medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment." *Id.* at 21. Especially in light of the ALJ's failure to address the most recent test scores, that conclusory statement does not build a bridge between the evidence and his conclusion.

Although the ALJ did not discuss the second prong of Listing 112.05(B), it is possible that J.A.M. met its requirements, too, and so the ALJ's error was not harmless. The Commissioner argues that "the ALJ's thorough explanation as to how Plaintiff did not satisfy the requirements for functional equivalence contains the reasoning supporting those earlier determinations, and so remand is not required." Docket Item 16-1 at 11. The Commissioner cites *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2015), in which the Second Circuit noted that "the absence of an express rationale for an ALJ's conclusion does not prevent [the court] from upholding [it] so long as we are able to look to other portions of the ALJ's decision" to determine that it was supported by substantial evidence. But that is not the case here.

While there may be some overlap between the subject matter of the six domains covering functional equivalence and the requirements of the second prong of 112.05(B), the ALJ's consideration of whether J.A.M.'s impairments ***functionally*** equal the listing is not the same as considering whether those impairments ***literally meet*** the explicit

11

provisions of 112.05(B)(2).  And even if the ALJ's discussion of functional equivalence did enable the Court to glean how the ALJ would have treated the second prong, that still would not demonstrate how or whether the ALJ considered J.A.M.'s May 2016 verbal score.  That score is simply not addressed in the decision,[5] and because it could have affected the ALJ's determination of whether J.A.M. met Listing 112.05(B), remand is required for the ALJ to explicitly consider that listing.

Because the ALJ failed to discuss whether J.A.M. met the 112.05(B) criteria in light of the May 2016 evaluation—when J.A.M.'s scores fell within the first prong of that listing—the ALJ "failed to provide a sufficient explanation for why Listing [112.05] was not met or medically equaled in this case."  *Ellen Skuse Powers v. Colvin*, 2016 WL 5661976, at *6 (W.D.N.Y. Oct. 3, 2016).  Specifically, in light of the ALJ's conclusory and "boilerplate statement . . . that he only considered medical evidence from medical sources," *id.* (internal citations omitted), the Court cannot tell whether the ALJ specifically considered the May 2016 evaluation in light of the 112.05(B) criteria.  The ALJ therefore failed to "'build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review,'" *Hamedallah ex rel. E.B.*, 876 F.Supp.2d at 142 (internal quotations omitted), and remand is required.

---

[5] The ALJ cited the page in the record on which that score appears when evaluating the first domain, acquiring and using information: "multiple cognitive test[s] yielded scores that revealed the claimant's cognitive abilities varied significantly."  Docket Item 9 at 25.  But the ALJ also noted that "the claimant's verbal comprehension and perceptual reasoning scores generally indicated the claimant was underdeveloped when compared to his peers."  *Id.*  That discussion begs the question of how the ALJ resolved the discrepancy between the recent test score that meets listing criteria and those that did not.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Gonzalez's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 19, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE